## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

_____

TEJINDRA KHATRI,

     Plaintiff

     v.

RYTEBOX, LLC, AXISPOINT, INC.,
SCOTT POWELL, DAN DISANO, &
JOE DECANIO

     Defendants

_____

CASE NO.
COMPLAINT
JURY TRIAL DEMANDED

## <u>COMPLAINT</u>

### INTRODUCTION

1.     Plaintiff Tejindra Khatri ("Plaintiff") brings this action against his employers who (1) misclassified Plaintiff as an independent contractor, (2) failed to pay Plaintiff for over 400 hours of work in violation of his employment agreement, and federal and state minimum wage laws, and (3) did not timely pay Plaintiff his wages in violation of the Massachusetts Wage Act, either because the wages were paid outside of the statutory deadline or were never remitted to Plaintiff.

2.     Plaintiff is an experienced software development and information technology operations ("DevOps") engineer, systems administrator, and information technology professional. He provided technical and computer support to Defendant Rytebox, LLC. ("Rytebox"), which offers music publishers, labels, and distributors a variety of data services to track music rights and manage royalties through cloud-based applications.

3.      Defendant Axispoint, Inc. ("Axispoint"), the parent company of Rytebox, entered into an agreement ("Agreement") with Plaintiff to provide services to Rytebox that misclassified Plaintiff as an independent contractor.

4.      Under the terms of the Agreement, Plaintiff was to be paid $60 an hour to provide "Technical Support under the direction of Joe DeCanio and other [Rytebox] management."

5.      Plaintiff assisted Defendants' customer support team by helping resolve technical problems experienced by customers.  He also performed maintenance and troubleshooting services on the servers relied upon by Rytebox customers to manage their royalties and music rights.

6.      Plaintiff worked under the close supervision of Defendant DeCanio, meeting virtually with DeCanio and other Rytebox employees two to three times a week to prioritize projects, ensure deadlines were being met, and confirm that Plaintiff was satisfactorily performing his job duties.

7.      Plaintiff kept track of his time on a daily basis, reported his hours weekly on Axispoint's time tracking system, and submitted invoices bi-monthly to receive payment for his work.

8.      Each time submission was reviewed and approved by Axispoint's project manager, Paul Velicky.

9.      Although Plaintiff recorded his hours and timely provided invoices to Defendants under the terms of the agreement, Defendants failed to pay Plaintiff Khatri any compensation for over 400 hours of work in breach of the terms of the Agreement and in violation of minimum wage provisions of Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 206, and Massachusetts Minimum Fair Wage Law ("Minimum Fair Wage Law"), M.G.L. c. 151, § 1. The complete failure to pay such wages also violates the timing provisions of M.G.L. c. 149, § 148 (the "Wage Act").

2

10.     Moreover, even when Defendants did pay Plaintiff wages, such wages were not timely paid in violation of the Wage Act, M.G.L. c. 149, § 148, entitling Plaintiff to treble damages for both late paid and unpaid wages.

11.     After Plaintiff complained that he was not timely paid wages, Defendants retaliated against him by progressively reducing his hours and work responsibilities, which ultimately terminated his employment in violation of the FLSA, 29 U.S.C. §§ 215(a), and Wage Act, M.G.L. c. 149, § 148A.

12.     Therefore, Plaintiffs brings claims for misclassifying Plaintiff as an independent contractor under the Wage Act (Count I), late payment of wages under the Wage Act (Count II), failure to pay minimum wage under the Minimum Fair Wage Law and FLSA (Counts III and IV), retaliation under the Wage Act and FLSA (Counts V and VI), quantum meriut (Count VII), breach of contract (Count VIII), and Account Stated (Count IX).

## PARTIES

1.     Plaintiff Tejindra Khatri is a natural person who resides in Malden, Massachusetts.

2.     Plaintiff performed all, or substantially all, work for Defendants from his home in Massachusetts.

3.     Defendant Rytebox LLC ("Rytebox"), is a Delaware limited liability company with a principal place of business at 353 W. 39th Street, 4th Floor, New York, NY.  Through its proprietary, cloud-based software as a service ("SaaS") platform, Rytebox offers music publishers, labels, and distributors a variety of data services including contract management, catalog management, revenue, and royalty management.

4.      Upon information and belief, Defendant Rytebox has at least $500,000 in annual gross volume of sales or business done.

5.      Defendant Axispoint Inc. ("Axispoint") is a New York corporation with a principal office address of 1440 Broadway, 4th Floor, New York, NY.  Defendant Axispoint is the parent company of Rytebox.

6.      According to its website, Axispoint provides its clients with, *inter alia*, technology consulting services, customer software development, blockchain product development, mobile app development, cloud services, and media asset management.

7.      Upon information and belief, Axispoint has at least $500,000 in annual gross volume of sales or business done.

8.      Defendant Scott Powell ("Powell") is a natural person and serves as the President of Defendant Rytebox. Defendant Powell is the founder of Rytebox.

9.      Powell also serves as Chief Operating Officer and Founder of Axispoint. On information and belief, Powell is a resident of the state of New York.

10.      Defendant Dan DiSano ("DiSano") is a natural person and serves as the Chief Executive Officer and President of Axispoint and CEO of Rytebox.  Upon information and belief, DiSano is a resident of the state of New York.

11.      Defendant Joe DeCanio ("DeCanio") is a natural person and serves as the Chief Revenue Officer of Defendant RyteBox.  On information and belief, DeCanio is a resident of the state of Connecticut.

## JURISDICTION AND VENUE

12.      This Court has subject matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 and § 1367, as one or more of Plaintiff's claims arises under a federal statute and the remainder of Plaintiff's claims are so related to his federal claim as to be a part of the same controversy.

13.     This Court has subject matter jurisdiction under 28 USCS § 1332 as the parties are citizens of different states and that the amount in controversy exceeds $75,000.

14.     This Court has personal jurisdiction over Defendants because a material portion of the actions and omissions that are the subject of this Complaint took place here and Defendants solicit business in this judicial district.

15.     Pursuant to 28 U.S.C. § 1391, venue properly lies in this judicial district because a substantial part of the events or omissions giving rise to these claims occurred here. In addition, all Defendants either operate their business or reside in this district.

16.     Prior to filing suit, Plaintiff filed a complaint with the Fair Labor Division of the Massachusetts Attorney General's Office and obtained a right to sue letter.

## FACTUAL BACKGROUND

A.  Plaintiff is Hired By Defendants

17.     Plaintiff Tejindra Khatri is an experienced software development and information technology operations ("DevOps") engineer, systems administrator, and information technology professional.

18.     Plaintiff has earned multiple degrees in his field, including a B.S. in Computer Science from the University of Massachusetts, Lowell, an A.S. in Computer Science from Bunker Hill Community College, and a diploma in mechanical engineering from Tribhuvan University in Nepal.

19.     Plaintiff's professional skillset, includes, but is not limited to, designing, deploying, and managing cloud-based applications and infrastructure across Amazon Web Services ("AWS") and other highly technical, hybrid environments.

20.     In October 2022, Plaintiff began performing work for Exactuals LLC, providing technical support as the Associate DevOps Engineer role for the SR1 platform, which Rytebox would ultimately acquire. During this time, Plaintiff worked under the direction of Defendant DeCanio.

21.     In February 2024, Rytebox announced that it acquired SR1 from Exactuals according to a press release on Rytebox's website:

> SR1 streamlines all aspects of royalty management for its clients, including mechanical licenses and reporting, expense processing, royalty statement generation, deal management, sales and income processing, master licensing and invoicing, and neighboring rights. These capabilities will both complement and expand on RyteBox's current offerings, which include contract and catalog management; revenue and royalty calculations, statements, and analytics; relationship management; and much more, to support both recorded music and music publishing.

22.     According to the RyteBox press release, "Joe DeCanio, President & CEO of SR1, and his team are joining RyteBox and will continue to support the SR1 customers."

23.     In January 2024, at or around the time of the SR1 acquisition, Defendants hired Khatri, who was part of the SR1 team, to perform technical support services for Rytebox pursuant to an agreement with Rytebox's parent company Axispoint.

24.     During all contract negotiations, Plaintiff was located in Massachusetts.

B.  Terms of Plaintiff's "Independent Contractor Agreement"

25.     On January 24, 2024, Khatri and Defendant Powell, on behalf of Axispoint signed an agreement ("Agreement") titled, "Independent Contractor Agreement", the terms of which are incorporated by reference to this Complaint. *See* Ex A.

26.     The Agreement recognized that Khatri's "principal place of business" was in Malden, MA. Thus, the parties recognized that Plaintiff would be working remotely from Massachusetts.

6

27.     For the duration of his time providing services to Defendants, Plaintiff performed all work for Rytebox from Massachusetts and never travelled to New York to perform services for Defendants.

28.     Under the terms of the Agreement, the parties agreed that Khatri was providing technical support services for Rytebox at the direction of Rytebox's officer, Defendant Joe DeCanio, and other Rytebox management.

29.     Pursuant to a statement of work ("SOW"), which was made part of the Agreement, Khatri provided services to Rytebox as follows: "Technical Support under the direction of Joe DeCanio and other RBX management. Average monthly hours anticipated to be 90 hours a month and if tracking above that average please seek approval from Joe." *See* Ex. B, Statement of Work.

30.     The SOW specifically states that Khatri's engagement had "No Fixed End Date."

31.     Under the Agreement, Khatri would be compensated at an hourly rate of $60/hour for his services while working remotely from Massachusetts.

32.     Under the SOW, Khatri's time would be "tracked through the Axispoint timesheet system OpenAir on a daily basis." The SOW further stated, "Approved timesheets will be routed to finance, and an invoice matching the timesheet hours and tasks will be submitted on the last day of each month."

C.  Plaintiff Performed His Job Duties Under the Direct Supervision of Defendants

33.     In January of 2024, Plaintiff began working for Rytebox remotely from his home in Malden, Massachusetts.

34.     Plaintiff wasn't brought in for a short-term project or isolated task. Plaintiff was embedded into the Rytebox internal technical team, expected to be available daily, and contributed across a range of operational areas and tasks.

35.     Defendants provided Plaintiff with a Rytebox email address to send and receive Rytebox related business emails.

36.     Plaintiff's work and responsibilities for Rytebox included: (a) maintaining and monitoring AWS and server and database infrastructure; (b) managing Rytebox Active Directory access and user setup; (c) assisting the customer support ("CS") team with technical issues and Rytebox platform bugs; (d) performing patching and system security updates; (e) and supporting and managing SFTP servers and Rytebox client metadata files.

37.     Tasks were typically assigned to Plaintiff by Rytebox employees, including Defendant DeCanio, via communication channels like Slack, Jira, and email, as well as during regular check-in telephone calls.

38.      If Plaintiff was assigned a task and had the technical expertise to perform the task, he did not have discretion to refuse to perform the task.

39.     Khatri's work was essential to the day-to-day functioning of Rytebox's cloud-based service platform critical to serving Rytebox customers.  He worked with the customer support team to resolve technical issues experienced by Rytebox customers and also performed maintenance and resolved issues with the servers that provided services to Rytebox customers.

40.     Plaintiff collaborated closely with Rytebox internal customer support ("CS") team, infrastructure team, and engineering team and was frequently the first point of escalation when Rytebox system issues occurred.

41.     Plaintiff's work was closely monitored and supervised by Axispoint and Rytebox. Axispoint reviewed and approved the hours that Plaintiff worked on a weekly basis to ensure that Plaintiff was efficiently completing tasks.

42.     Plaintiff met with Defendant DeCanio two to three times a week in which Plaintiff was given feedback on his job performance, instructed how to prioritize work and given deadlines to complete his tasks.

43.     During his time working for Defendants, Plaintiff did not take on any other jobs because the work for Defendants was very time-consuming and demanding. The nature of the work often required Plaintiff to be available at irregular hours, including late nights and early mornings which made it impractical to pursue other opportunities.

D.  Axispoint and Rytebox Jointly Employed Plaintiff

44.     Axispoint is the parent company of Rytebox and the two companies operated as an integrated enterprise.

45.     When Rytebox acquired SR1, Defendant Disano stated, "SR1 is a strategic acquisition for Rytebox, and we're excited to bring them into our larger Axispoint family."

46.     Rytebox and Axispoint share common management.  For example, Defendant Powell is the founder and president of Rytebox and the founder and Chief Operating Officer of AxisPoint.  Defendant DiSano is CEO of both Axispoint and Rytebox.

47.     As discussed above, Axispoint retained Plaintiff pursuant to the Agreement, which set forth the amount and timing of Plaintiffs' compensation and scope of work for Rytebox.

48.     Moreover, Axispoint reviewed Plaintiff's hours to ensure that he was working efficiently, while Rytebox and DeCanio closely supervised Plaintiff in his work.

E.  Defendants Powell, DiSano and DeCanio Had Substantial Control Over the Financial Affairs and Employment Practices of Rytebox and Axispoint

49.     Defendants DiSano, DeCanio, and Powell orchestrated Defendants' unlawful scheme to misclassify Plaintiff as an independent contractor so that payment of Plaintiff's wages

was contingent on Axispoint and Rytebox receiving investor funding rather than paying Plaintiff his wages bi-weekly as required by law.

50.    When Plaintiff sought payment for over 400 hours of work, Defendants DiSano and Powell stated that Plaintiff bore the risk that Defendants could not secure funding and would not be paid until such funding was secured.

51.    Defendant Powell exercised significant managerial authority in his role as an officer of both companies.

52.    According to Axispoint's website, Powell is "a hands-on executive responsible for operations, delivery, and product development at Axispoint." Upon information and belief, Defendant Powell has a significant ownership interest in Axispoint and Rytebox.

53.    He had the authority to set the terms of Plaintiff's employment and signed the Agreement on behalf of Axispoint misclassifying Plaintiff as an independent contractor and setting the terms of Plaintiff's employment.

54.    As Chief Executive Officer, Defendant DiSano exercises significant managerial authority over Axispoint's operations. Further, he possesses responsibility for raising capital, revenue growth, employee compensation, and exercised decisions over personnel, including hiring and firing executive team members.

55.    After Plaintiff complained of late payments, Defendant DiSano explained that the untimely payments were due to a delayed payment from an investor and that once the investor wired the company money, Plaintiff would receive his compensation.

56.    DiSano further proposed a payment plan to Khatri while Defendants sought funding. While Defendants ultimately never followed through on their promises, DiSano had authority to act on behalf of the Defendants with respect to Plaintiff's compensation.

57.     Similarly, when Plaintiff complained to Defendant Powell about the late payments due to lack of investor funding, Defendant Powell stated he was waiting to hear on the status of the investment, confirming that Powell was aware of and approved of Defendants' unlawful scheme to make Plaintiff's wages contingent on investor funding.

58.     Therefore, Defendants DiSano and Powell had authority and control over Defendants' payment and employment practices.

59.     Throughout his time working for Defendants, Plaintiff performed his work under the direct supervision of Defendant DeCanio.

60.      Plaintiff worked under DeCanio at Exactuals and DeCanio oversaw and managed the conditions of Plaintiff's employment after SR1 purchased by Rytebox.

61.     Defendant DiSano, Powell, and DeCanio had the power to hire and fire employees, including Plaintiff.

F.   Defendants Do Not Timely Pay Plaintiff and Fail to Pay Plaintiff for All Hours Worked

62.     For the duration of his time providing services to Rytebox, Plaintiff recorded his hours daily and regularly reported his hours via invoices.

63.     Plaintiff sent Defendants 28 invoices over the course of this work for Defendants. A letter Plaintiff sent to Defendants dated April 15, 2025 (Ex. C), and incorporated by reference herein, details the pay periods, dates invoices were sent, number of hours Plaintiff worked, and pay due to Plaintiff.

64.     The 28 invoices submitted to Defendants totaled $81,000, representing 1,350 hours of work at the parties' agreed upon rate of $60/hour.

65.     Defendants made 14 payments to Plaintiff totaling $56,140, representing payment for just 935.66 hours of work performed by Khatri.  The date and amount of all payments that Defendants made to Plaintiff is listed in Ex C.

66.     Therefore, Defendant Khatri received no pay for over 400 hours that he worked.

67.     Khatri was never provided a paystub or pay statement in connection with any of the payments Defendants made to Plaintiff for work performed in violation M.G.L. c. 149, § 148, which requires employers to provide a check stub showing, *inter alia*, the name of the employer, name of the employee, number of hours worked, and hourly rate.  Therefore, Defendants did not specify which invoice was associated with each payment.

68.     No payment made to Plaintiff was timely under the Massachusetts Wage Act, M.G.L. c. 149, § 148, which requires payment of wages either weekly or bi-weekly, and within six days of the end of each pay period.

69.     For example, Khatri reported 5 hours of work performed between January 16, 2024 and January 30, 2024. Khatri sent his first invoice to Defendants in the amount of $300 for 5 hours on February 2, 2024 ("Invoice #1").

70.     Between February 1, 2024 and February 15, 2024, Khatri reported 59 hours of work performed to Defendants. Khatri sent his second invoice to Defendants in the amount of $3,540 on February 16, 2024 ("Invoice #2).

71.     On March 1, 2024, Defendants made a payment of $3,840 to Khatri. No pay stub was provided with this payment.

72.     The March 1, 2024 payment was made 30 days after the end of the applicable pay period for Invoice #1 and 15 days after the second applicable pay period for Invoice #2.

12

73.    Between May 16, 2024 and May 30, 2024, Plaintiff performed 58 hours of work for Defendants. Khatri sent an invoice to Defendants in the amount of $3,480 for these hours on June 1, 2024 ("Invoice #9").

74.    On August 22, 2024, Defendants made a payment of $3,480 to Plaintiff. No pay stub was provided with this payment.

75.    The August 22, 2024 payment was made **83 days** after the end of the applicable pay period for Invoice #9, for which this payment apparently applied.

76.    Between June 1, 2024 and June 15, 2024, Plaintiff performed 43 hours of work for Defendants. Khatri sent an invoice to Defendants in the amount of $2,580 for these hours on June 16, 2024 ("Invoice #10").

77.    Between June 16, 2024 and June 30, 2024, Plaintiff performed 45 hours of work for Defendants. Khatri sent an invoice to Defendants in the amount of $2,700 for these hours on June 30, 2024 ("Invoice #11").

78.    Between July 1, 2024 and July 15, 2024, Plaintiff performed 67 hours of work for Defendants. Khatri sent an invoice to Defendants in the amount of $4,020 for these hours on July 16, 2024 ("Invoice #12").

79.    Between July 16, 2024 and July 31, 2024, Plaintiff performed 54 hours of work for Defendants. Khatri sent an invoice to Defendants in the amount of $3,240 for these hours on August 1, 2024 ("Invoice #13").

80.    On September 13, 2024, Defendants made a payment of $5,000 to Plaintiff. No pay statement or pay stub was provided with this payment indicating which hours or invoices were being paid.

81.     The September 13, 2024 payment was made nearly *three months* after Khatri's work in early June from Invoice #10 and *six weeks* after the work Khatri performed in July from Invoice #13.

82.     Putting aside the untimeliness of these payments, the $5,000 payment represented only a portion of the total waged earned based on the invoices issued over this period.

83.     Khatri continued to regularly bill Defendants for work performed through the end of 2024.

84.     During this time, Defendants continued to pay Plaintiff sporadically in amounts less than the full amount due and never within the time period required under Massachusetts Wage Act, M.G.L. c. 149, § 148.

     G.   <u>Defendants Retaliated Against Plaintiff After He Complained That He Was Not Being Paid For His Work.</u>

85.     During this time, Plaintiff made several attempts to address these untimely payments and give Defendants the opportunity to make payment in full.

86.     Plaintiff communicated the lack of timely payments to both Powell and DeCanio.

87.     On December 3, 2024, Khatri sent an email to Defendant Powell requesting payment on the multiple outstanding invoices Defendants owed to Plaintiff and offering to collaborate to come up with a resolution that benefitted all parties.

88.     On December 3, 2024, Defendant Powell answered Plaintiff's email from his Rytebox email address, stating: "TJ, I am very sorry about this situation. I'm waiting for an update in the next few days and will be back to you soon."

89.     On December 11, 2024, Defendant Powell provided an update, writing from Rytebox email address: "TJ, Here is the update I got for you. The goal is to pay you 2 months of

what we owe this month, pay ½ of what's remaining in January, and be fully caught up by the end of February."

90.     On December 11, 2024, Plaintiff replied to Defendant Powell's email and thanked Powell for his efforts to get caught up.

91.     Despite these representations by Defendant Powell, no payment was made to Plaintiff in the month of December by Defendants.

92.     On Friday, January 17, 2025, Defendant DiSano, emailed Plaintiff and advised: "Hi TJ, [w]e apologize for the delay in processing payment. We are looking to make a payment next week. We were delayed in closing our financing, but we finally signed with our large investor right before Christmas (this means we will be receiving funds now through the first quarter). We are looking to have you caught up on payments by the end of March with payments along the way. Thank you for your patience, and again, we apologize for the delay."

93.     Contrary to Defendants' representations, no payment was made in the week following January 17, 2025.

94.     Plaintiff was required to reach out to Defendants again on January 24, 2025 to inquire about the status of payment.

95.     On January 31, 2025, Defendants made a payment to Plaintiff in the amount of $3,000.

96.     This was the first payment made to Plaintiff since November 1, 2024.

97.     Despite working for Defendants for months, no payments had been made to Plaintiff in the 90 days prior to January 31, 2025.

98.     Following his complaints about late payments and non-payment for services he performed, Defendants began to restrict the tasks that Plaintiff worked on.

99.     This had the effect of reducing Plaintiff's hours and compensation in response to Plaintiff's protected activity.

100.     Defendants' actions to restrict Plaintiff's tasks and reduce his hours constituted unlawful retaliation in violation of the Wage Act and the FSLA.

101.     Moreover, by refusing to pay Plaintiff for wages earned and reducing his hours, Defendants effectively terminated Plaintiff's employment.

102.     At the time Plaintiff repeatedly requested payment for his work, Plaintiff reported that the situation had created a stressful financial situation for him. In an email from February 21, 2025 to Defendants Powell, DiSano, and others, Plaintiff advised that the lack of payment had caused "significant financial strain", that he had "incurred additional fees and was unable to make timely payments, which has had a serious impact on my daily life" and that he urgently needed these payments to manage overdue expenses to avoid further financial impact.

103.     The last day Plaintiff provided services to Defendants was March 26, 2025.

104.     To date, Defendants have failed to pay Plaintiff any compensation for over 400 hours of work.

105.     Plaintiff has, pursuant to 29 U.S.C. § 216(b), consented in writing to be a party to the FLSA claims in this action. See Exhibit "D".

## COUNT I: MISCLASSIFICATION AS AN INDEPENDENT CONTRACTOR
### M.G.L. c. 149, § 148B
### (ALL DEFENDANTS)

106.     Plaintiff hereby repeats and reavers the allegations set forth in the preceding paragraphs as if fully set forth herein.

107.     Massachusetts law creates a presumption that an individual performing any service for an alleged employer shall be considered an employee. See M.G.L. c. 149, § 148B(a).

108.    For the entire time Khatri worked for Defendants, Plaintiff was misclassified as an independent contractor, was paid wages which failed to make any withholdings from his compensation, and he was denied benefits afforded to his properly classified co-workers.

109.    Defendants are unable to meet their burden to show that their decision to classify Plaintiff as an independent contractor, rather than an employee, was lawful.

110.    Plaintiff was not free from Defendants' control and direction in connection with the performance of his job.

111.    The statement of work signed by Plaintiff explicitly states that work was to be performed "under the direction of Joe DeCanio and other RBX management."

112.    Defendants and other Rytebox employees directly supervised and directed Plaintiff in the performance of his work.

113.    Plaintiff's services were not performed outside the usual course of Defendants' business.

114.    To wit, Plaintiff's job providing technical support services, as set out in more detail above, was central to the usual course of business of Rytebox.

115.    Plaintiff performed a range of technical support services which were essential for the proper functioning of the company's music rights technology platform.

116.    As a result, Defendants misclassified Plaintiff as an independent contractor when they should have classified him as an employee, thereby depriving him of the benefits afforded to employees.

117.    Defendants Axispoint and RyteBox are jointly liable as employers under the Wage Act.

118.    As President of Rytebox, Defendant Powell is individually liable for Defendant Rytebox's violations of the Wage Act.

119.    As Chief Revenue Officer of Rytebox, Defendant DeCanio is an officer or agent having the management of the business and, as a result, is individually liable for Defendant Rytebox's violation of the Wage Act.

120.    As the Chief Executive Officer and President of Axispoint and Rytebox, Defendant DiSano is individually liable for Defendant Axispoint's violations of the Wage Act.

121.    As a result of Defendants' actions, Plaintiff was injured and suffered damages as he was denied wages and benefits paid to properly classified coworkers.

## COUNT II: VIOLATIONS OF THE MASSACHUSETTS WAGE ACT
### LATE PAYMENT OF WAGES
### M.G.L. c. 149, § 148
### (ALL DEFENDANTS)

122.    Plaintiff hereby repeats and reavers the allegations set out in the preceding paragraphs as if fully set forth herein.

123.    Because Plaintiff was an employee of Defendants under Massachusetts law, Defendants were required to pay Plaintiff's wages in full and in the strict time frames set forth by the Wage Act, M.G.L. c. 149, § 148, either weekly or bi-weekly, and within six days of the end of each pay period.

124.    As set forth above, when Defendants paid Plaintiff's wages, they were not within the time frame required by the Wage Act.  Moreover, Defendants still have not paid Plaintiff for approximately 400 hours of work he performed on behalf of the Defendants.

125.    Defendants Axispoint and RyteBox are jointly liable as employers under the Wage Act.

126.    As President of Rytebox, Defendant Powell is individually liable for Defendant Rytebox's violations of the Wage Act.

127.    As Chief Revenue Officer of Rytebox, Defendant DeCanio is an officer or agent having the management of the business and, as a result, is individually liable for Defendant Rytebox's violation of the Wage Act.

128.    As the Chief Executive Officer and President of Axispoint, Defendant DiSano is individually liable for Defendant Axispoint's violations of the Wage Act.

129.    Through the actions and omissions set forth herein, Defendants violated the Wage Act, including, without limitation, by failing to pay Plaintiff's wages in a complete and timely manner.

130.    As a result of Defendants' actions, Plaintiff was injured and suffered damages.

131.    Plaintiff is entitled to treble damages for each late payment of wages.

**COUNT III: VIOLATION OF THE MASSACHUSETTS MINIMUM WAGE LAW**

132.    Plaintiff hereby repeats and reavers the allegations set forth herein.

133.    Through the actions and omissions set forth herein, Defendants violated the Massachusetts Minimum Wage Law, M.G.L. c. 151, § 1, including by failing to pay Khatri the statutory minimum wage for all hours worked.

134.    Defendants paid no compensation to Plaintiff for over 400 hours that he worked.

135.    Defendants Axispoint and RyteBox are jointly liable as employers under the Wage Act.

136.    As President of Rytebox, Defendant Powell is individually liable for Defendant Rytebox's violations of the Wage Act.

137.    As Chief Revenue Officer of Rytebox, Defendant DeCanio is an officer or agent having the management of the business and, as a result, is individually liable for Defendant Rytebox's violation of the Wage Act.

138.    As the Chief Executive Officer and President of Axispoint, Defendant DiSano is individually liable for Defendant Axispoint's violations of the Wage Act.

139.    As a result of Defendants' actions, Plaintiff was injured and suffered damages.

### COUNT IV: FAILURE TO PAY MINIMUM WAGE IN VIOLATION OF FAIR LABOR STANDARDS ACT.

140.    Plaintiff hereby repeats and reavers the allegations set forth herein.

141.    Rytebox is an "enterprise" as defined by the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 203.

142.    Defendant Rytebox and Axispoint were Plaintiff's joint employers under the FLSA.

143.    At all relevant times, Rytebox's annual gross revenue of sales made or business done met or exceeded $500,000.

144.    At all relevant times, Defendants Powell and DeCanio exercised control over all relevant aspects of the payment of wages to Rytebox employees, including when employees were paid, how much they were paid, and on what basis.

145.    Defendants Powell, Disano and DeCanio periodically hired and fired Rytebox employees.

146.    Defendants Powell, Disano and DeCanio were Plaintiff's employers under the FLSA.

147.    Defendants were responsible for setting the terms and conditions of Plaintiff's employment and ensuring that Plaintiff was timely paid all wages owed.

148.    Defendants violated the FLSA minimum wage mandate, 29 U.S.C. § 206, by failing to pay Plaintiff statutory minimum wage for all hours worked.

149.    Specifically, Defendants paid no compensation to Plaintiff for over 400 hours of work.

150.    Defendants made little or no effort to ascertain their obligation to pay the FLSA-mandated minimum wage, and as such, Defendants failed to act in good faith and/or acted in willful or knowing disregard of their obligations under the FLSA.

### COUNT V: MASSACHUSETTS WAGE ACT RETALIATION
### (ALL DEFENDANTS)

151.    Plaintiff hereby repeats and reavers the allegations set forth in the preceding paragraphs as if fully set forth herein.

152.    Through the actions and omissions set forth herein, Defendants violated the Wage Act, M.G.L. c. 149, § 148A by retaliating against Plaintiff for his complaint about unpaid and late paid wages.

153.    Defendants are employers under M.G.L. c. 149, § 148A.

154.    Defendants retaliated against Plaintiff through the actions and omissions referenced herein, including, but not limited to, reduction of hours, reduction of assigned tasks, and termination of employment.

155.    As a result of Defendants' actions, Plaintiff was injured and suffered damages, including damages for lost wages, back pay, front pay, and emotional distress.

### COUNT VI – FLSA RETALIATION
### (ALL DEFENDANTS)

156.    Plaintiff hereby repeats and reavers the allegations set forth herein.

157.    Plaintiff engaged in conduct protected by the FLSA when he complained about his unpaid wages and Defendants' failure to pay a minimum wage.

158.    Defendants retaliated against Plaintiff for such protected conduct by reducing Plaintiff's hours and effectively terminating Plaintiff's employment, in further violation of the FLSA, 29 U.S.C. §§ 215(a).

159.    Defendant employed Plaintiff within the meaning of the Fair Labor Standards Act.

160.    Defendants' retaliation against Plaintiff was not in good faith, was a willful violation of the FLSA, and in knowing disregard of Defendants' obligations under the FLSA.

### COUNT VII – QUANTUM MERUIT/ UNJUST ENRICHMENT
### (AGAINST DEFENDANTS RYTEBOX AND AXISPOINT)

161.    Plaintiff hereby repeats and reavers the allegations set forth herein.

162.    Plaintiff rendered valuable services to Defendants Rytebox and Axispoint to the significant financial benefit thereof.

163.    As Defendants Rytebox and Axispoint were aware, Plaintiff expected to be compensated for those services.

164.    Although Defendants Rytebox and AxisPoint benefited greatly from and accepted Plaintiff's services, Defendants Rytebox and AxisPoint failed to pay Plaintiff for his work under the agreed upon terms to Plaintiff's significant financial detriment and resulting in Rytebox's unjust enrichment.

### COUNT VIII – BREACH OF CONTRACT
### (AGAINST DEFENDANT AXISPOINT)

165.    Plaintiff hereby repeats and reavers the allegations set forth herein.

166.    Plaintiff and Defendant Axispoint entered into a valid and enforceable contract.

167.    The contract required Plaintiff to perform certain services for Defendant Axispoint and required Defendant Axispoint to pay plaintiff compensation for those services.

168.    Plaintiff fully performed all obligations required under the contract.

169.    Plaintiff performed the services as agreed in the contract, completing all work in accordance with the terms and specifications set forth in the agreement.

170.    Defendant Axispoint breached the contract by failing to pay Plaintiff the agreed-upon compensation.

171.    Despite plaintiff's full performance, Defendant has failed and refused to pay Plaintiff the amount of $24,860 that is due under the contract.

172.    As a direct and proximate result of Defendant's breach, Plaintiff has suffered damages.

173.    Plaintiff has suffered monetary damages in the amount of $24,860, representing the unpaid compensation for services rendered under the contract.

## COUNT IX: ACCOUNT STATED
### (AGAINST DEFENDANT AXISPOINT)

174.    Plaintiff hereby repeats and reavers the allegations set forth herein.

175.    Plaintiff and Defendant Axispoint had a financial relationship whereby Plaintiff provided services to Defendant for which compensation was due.

176.    Plaintiff submitted to defendant invoices or statements of account reflecting the amount due for services rendered.

177.    Plaintiff sent Defendant 28 invoices detailing the services performed and the amounts due.

178.    Defendant received these invoices or statements and retained them without objection within a reasonable time.

179.    Defendant did not dispute or object to the invoices within a reasonable time after receiving them.

180.    By retaining the invoices or statements without objection, Defendant agreed to the correctness of the account and impliedly promised to pay the amount stated.

181.    Defendant's retention of the invoices without objection constituted an implied agreement that the amount stated was correct and due.

182.    Despite this implied agreement, defendant has failed and refused to pay the amount due.

183.    As a result of Defendant's failure to pay the account stated, Plaintiff has suffered damages in the amount of $24,860.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Tejindra Khatri requests that this Court enter the following relief:

A.  Entry of judgment in favor of Plaintiff on all counts;

B.  An award of damages for Plaintiff's: (i) unpaid wages; (ii) damages arising from misclassification, including lost wages and benefits; (iii) lost wages and benefits arising from Plaintiff's unlawful termination; (iv) damages for emotional distress; (v) other consequential or economic damages; (vi) liquidated and/or treble damages; (vii) punitive damages; (viii) damages in quantum meruit; (ix) attorney's fees; (x) costs; (xi) all compensatory damages, and (xii) statutory interest; and

C.  Such further relief as the Court deems just.

## JURY DEMAND

Plaintiff demands a TRIAL BY JURY on all claims so triable.

Date:   August 27, 2025
        New York, NY

Respectfully Submitted
TEJINDRA KHATRI

24

By his attorneys,

_____

Ananda Chaudhuri, Esq.
Law Office of Ananda Chaudhuri
57 W. 57th Street
New York, NY 10019
Tel: 212-457-1288
Email: ananda@ac-pllc.com

*/s/ Joseph T. Moen*

_____

Joseph T. Moen, Esq.
*Pro Hac Vice Admission To Be Filed*
Law Office of Joseph T. Moen
45 Prospect Street
Cambridge, MA 02139
Tel: 617-575-9240
Email: Joe@jtmoenlaw.com